*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re FISHER, Minors

UNPUBLISHED
July 28, 2022

No. 359040
Wayne Circuit Court
Family Division
LC No. 18-002358-NA

Before: M. J. KELLY, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

Appellant-mother appeals as of right the trial court's order terminating her parental rights to her minor children ADF, AAF, and RF, under MCL 712A.19b(3)(c)(*ii*) (failure to rectify other conditions); MCL 712A.19b(3)(j) (reasonable likelihood that the child would be harmed if returned to the parent); and MCL 712A.19b(5) (best interest factors). Mother challenges both the trial court's findings regarding the statutory grounds for termination, as well as the determination that termination was in the children's best interests. We affirm.

## I. BACKGROUND

The primary barrier to reunification throughout the case was mother's drug addiction and lack of engagement with her children. Mother consistently missed her weekly drug screenings and, more often than not, tested positive for various illicit substances, including cocaine, THC, benzoylecgonine, phentermine, and oxycodone. Moreover, mother only partially complied, at best, with the court ordered treatment plan designed to help her overcome her substance abuse and reunify with her children.

The children first came into care in 2018 when mother failed to address the severe mental health needs of her oldest child, NF. At the time the Department of Health and Human Services (DHHS) filed its petition in 2018, ADF was ten years old and had lived with her maternal grandmother her whole life. AAF, who at the time was three, had lived with mother but in the

-1-

maternal great-grandmother's home.[1]  The trial court authorized the petition, finding it clearly contrary to the welfare of the children to remain in mother's care, and placed AAF and ADF in their maternal grandmother's care.  Mother subsequently admitted to the allegations in the petition, conceding that she could not provide the proper care for her children as she was homeless and suffered from depression.  Mother was not employed at this time and only received social security disability payments following an accident in 2013, where mother's ex-boyfriend shot her in the head, causing severe limitations, neurological and physical problems.

At the initial disposition hearing in January of 2019, the court ordered mother to complete a treatment plan consisting of parenting classes, counseling services, a psychological evaluation, a psychiatric evaluation, and an in-patient program to combat her substance abuse.  In February of 2019, mother gave birth to her daughter RF, who tested positive for cocaine.  Months later, DHHS discovered RF during a scheduled visit where mother lied about still being pregnant and hid the baby in an upstairs bedroom.  DHHS filed an additional petition seeking termination of mother's rights to RF, and the trial court placed RF in the maternal grandmother's care.  In March of 2020, AAF, ADF, and RF were removed from the maternal grandmother's care because of multiple maltreatment and care complaints.[2]  The children were then placed with the maternal grandfather. However, shortly after, ADF was removed from her maternal grandfather's care because of her poor behavior and was placed with her paternal grandmother.

The record shows that over almost three years mother only partially participated in the court ordered treatment plan.  In that intervening time, mother had completed parenting classes and was deemed compliant with substance abuse therapy.  Mother also completed a psychiatric evaluation and was diagnosed with bipolar and post-traumatic stress disorders.  By the time of the termination hearing in August of 2021, mother had secured a month-to-month lease on a four-bedroom home she claimed to live in alone despite DHHS reporting a man living with her.

On the other hand, mother showed minimal progress toward combating her drug addiction. She had actively failed to attend many of her drug screens, and when she did attend, her results were mostly positive for illicit substances.  Over almost three years, the court ordered mother to partake in roughly 128 drug screens.  Of the 128 required screenings, mother presented for only

---

[1] It is unclear whom mother and AAF were living with at the time the petition was filed in 2018. While mother testified that they were living with mother's grandmother, she admitted it was not her "real" grandmother but rather fictive kin, someone she looked to as a grandmother.

[2] The children were removed from the maternal grandmother's care because multiple complaints regarding the maternal grandmother's drunkenness were filed.  The foster care specialist testified at trial that on one occasion, the maternal grandmother called the police while intoxicated, reporting that ADF and AAF were lost.  Police officers responded to the call, and when they discovered ADF and AAF in the garage, the maternal grandmother assaulted the children, prompting the police to file a complaint and the children's subsequent removal from the maternal grandmother's home.

30 and rendered positive results on 21 of the 30 tests. Mother was also terminated from her parent partner because of a lack of engagement with services.

Mother did not take an active role in the children's lives and failed to attend 81 of 135 scheduled visitations with her children. During the in-person visitations that she did attend, she spent most of the time watching TV or talking with the other adults while the kids played with each other. On one occasion, mother presented to visitation at the maternal grandfather's home with a runny nose and white residue powder underneath her nose. Mother also brought an unauthorized visitor claiming to be RF's father with her to visitations. The maternal grandfather ceased in-person visitations because of these issues, which mother did not contest, sharing that she preferred virtual visits instead of supervised in-person visits with the agency. Even with virtual visits, mother was still only partially compliant. On multiple occasions, she would call past the children's bedtime, would not charge her phone and needed to cut visits short, or would not call at all. The conversations during these visits would be led primarily by the children without mother inquiring about their well-being, such as the progress of their therapy and treatments. Mother did not provide financial support or suitable resources to her children or their caregivers aside from broken toys or clothes that did not fit.

The foster care specialist who authored the petitions for termination testified at trial that mother treats the children like friends and opined that mother did not benefit from the parenting classes as she still did not try to bond with the children at visitations. The maternal grandfather similarly testified that mother had established more of a big sister or friend relationship with her children because mother hardly interacted with her children and contributed no lesson or instruction to their lives.

On August 17, 2021, the trial court terminated mother's parental rights to the children, finding that mother did not rectify the conditions that brought the children into care in terms of her substance abuse. The trial court found that despite the extraordinary length of this case, almost three years, mother continued to abuse dangerous drugs, including while RF was in utero, and had shown ongoing neglect of her children.

The following month, the trial court found that termination of mother's parental rights was in the children's best interests. The trial court noted that mother did not partake in quality parenting time or demonstrate a healthy parent and child relationship. Mother did not benefit from the services she had engaged in as she continued to test positive for dangerous drugs[3] and never inquired about her children's well-being or progress.

## II. ANALYSIS

---

[3] In fact, in the time between the termination hearing on August 17, 2021, and the best interest hearing on September 23, 2021, mother failed to attend three of six mandatory drug screenings and tested positive for substances including cocaine, THC, cannabinoid, and benzoylecgonine, at the three screenings she did attend.

Mother argues that the trial court erred by finding clear and convincing evidence supporting a statutory ground for termination, and that termination was not in the best interests of the children.

"This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). This Court also reviews for clear error the trial court's decision regarding the child's best interest. *In re LaFrance Minors*, 306 Mich App 713, 723; 858 NW2d 143 (2014). "A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id*.

## A. STATUTORY GROUNDS

At the end of the termination hearing, the trial court stated on the record that the statutory basis for terminating mother's parental rights was pursuant to MCL 712A.19b(3)(c)(*ii*) and (j). However, the trial court subsequently entered an order including additional statutory grounds for termination, specifically, MCL 712A.19b(3)(c)(*i*) and (g). It is well settled law that courts only speak through written judgments and orders, and not oral statements. *Brausch v Brausch*, 283 Mich App 339, 353; 770 NW2d 77 (2009). Nevertheless, mother only challenges the trial court's findings related to MCL 712A.19b(3)(c)(*ii*) and (j). [4] Therefore, we will only analyze whether the trial court erred when it terminated mother's parental rights under MCL 712A.19b(3)(c)(*ii*) and (j), which permit termination of parental rights under the following circumstances:

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . .

(*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

---

[4] The failure to challenge all statutory bases for termination requires affirmance of the trial court order. *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009). Mother also cites and quotes two provisions of the statute, MCL 712A.19b(A)(i) and(A)(ii), that were not cited by the trial court. Additionally, mother did not provide an analysis of how each statutory provision relied on by the trial court was erroneously applied. Instead, mother lumps together her analysis of every statutory challenge into a single argument section without any direction as to which fact or analytical point concerns which portion of the statute. Therefore, mother has abandoned her challenges to MCL 712A.19b(3)(c)(*ii*) and (g) by failing to properly brief them. See *Seifeddine v Jaber*, 327 Mich App 514, 520; 934 NW2d 64 (2019) (stating that failure to brief an issue constitutes abandonment).

* * *

> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's
> parent, that the child will be harmed if he or she is returned to the home of the
> parent.

Before terminating a respondent's parental rights, the trial court must find by clear and convincing evidence that at least one statutory ground for termination exists. *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009). To terminate parental rights, only one statutory ground for termination needs to be satisfactorily proven. MCL 712A.19b(3).[5]

Upon review of the record, we hold that the trial court did not err in finding that the grounds for termination set forth in MCL 712A.19b(3)(c)(*ii*) and (j) were met. The record evidence clearly shows that mother had been before the trial court more than 182 days since entry of the initial disposition order, and that the conditions which brought the children within the court's jurisdiction, mother's substance abuse and neglect of the children, were not rectified. The trial court gave mother a meaningful opportunity to participate in services, yet mother showed minimal progress over almost three years. Although mother had completed parenting classes, attended substance abuse therapy, and had secured suitable housing, she still did not appreciate the significance of her actions. Mother did not comply with several other aspects of her treatment plan, and mother was terminated from her parent partner for noncompliance. The record shows that mother repeatedly avoided her weekly drug screenings and tested mostly positive at the screenings she did attend. Mother blatantly disregarded visitation rules and guidelines, and the maternal grandfather and foster caseworker both testified that during the scheduled visitations that mother did attend, she did not partake in quality parenting time and did not engage with her children. Mother would spend many scheduled visitations watching TV or conversing with the other adults present while her children played together. Mother sometimes brought unauthorized individuals with her to visitation.

The trial court also did not clearly err in finding a reasonable likelihood that the children would be harmed if returned to her care, given mother's unshakable addiction and neglect of her children.[6] Mother habitually used dangerous drugs, including during her pregnancy with RF, and even showed up to visitation with white residue powder under her nose. Mother carries her addiction with her daily, inevitably creating an environment unsuitable for-and dangerous to children. Mother was not in tune with reality and made poor decisions about her and her children's

---

[5] Mother relies on *People v Hicks*, 149 Mich App 737; 386 NW2d 657 (1986), arguing that this Court should not deprive a parent of the custody of their children without "extremely good cause." Interestingly, this fictitious standard is not found anywhere in *Hicks*. The controlling standard for termination of parental rights is set out in the statute, MCL 712A.19b, which contains no requirement that "extremely good cause" be shown.

[6] Although we have determined that the trial court did not err in terminating mother's parental rights under MCL 712A.19b(3)(c)(*ii*), we will still address mother's challenge to section (j) as a matter of completeness.

welfare. Indeed, the children came under the purview of DHHS when mother failed to address NF's severe mental health needs. The record shows that mother demonstrated continued neglect of her children. The foster care specialist testified at trial that mother never inquired about her children's well-being or the progress of their therapy, despite ADF's severe mental health issues.[7] Mother could not achieve reunification nor demonstrate the ability to safely parent her children. The trial court, therefore, did not clearly err by finding that clear and convincing evidence established a ground for termination under MCL 712A.19b(3)(c)(*ii*) and (j).

## B. BEST INTERESTS

Mother next challenges the trial court's determination that termination of her parental rights served the children's best interests. "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). The court may consider several factors when deciding if termination of parental rights is in a child's best interests, including the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012). The court may also consider psychological evaluations, the child's age, parenting techniques during parenting time, and a parent's history. *In re Jones*, 286 Mich App 126, 131; 777 NW2d 728 (2009). "The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App at 713. In considering the child's best interests, the trial court's focus must be on the child, not the parent. *In re Moss*, 301 Mich App 76, 88; 836 NW2d 182 (2013). Whether termination of parental rights is in a child's best interests must be proven by a preponderance of the evidence. *Id*. at 90.

The trial court found several factors weighing in favor of termination, including mother's lack of quality parenting time, the broken bond between mother and her children, mother's continued abuse of dangerous drugs, and her avoidance and lack of appreciation of services provided. Mother neglected scheduled visitations and ample opportunities to build a meaningful relationship with her children. When mother presented at visitation, she was disinterested and hardly engaged with her children.

A preponderance of the evidence established that the children would not be safe in mother's care. Despite mother's assertions to the contrary, she only partially complied with her treatment plan. Completing parenting classes without an actual appreciation of the lessons learned is equivalent to not having completed the course at all. See *In re Olive/Metts*, 297 Mich App at 43 (finding that respondents' failure to derive any lasting benefits from the services provided to her weighed in favor of termination). See also *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012) (emphasizing that while there is a "responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered[,]" and ultimately held that insufficient compliance and benefit from the services provided necessitated the termination of parental rights).

---

[7] By the time of the termination hearing in 2021, ADF was hospitalized because she attempted to overdose on her antidepressants.

The same holds true for her completion of substance abuse therapy, as the evidence shows that she continued to abuse drugs.

The trial court found that AAF and RF received excellent care, structure, stability, and permeance in their maternal grandfather's care. And the record supports the trial court's findings. At trial, the maternal grandfather described AAF as a blank slate academically when he assumed guardianship over her. AAF, 5 years old at the time, could not read nor identify letters, numbers, colors, and shapes. After only 15 months with the maternal grandfather, AAF learned how to read, perform simple math equations, tell time on a clock, and could identify a variety of letters, numbers, colors, and shapes. When RF first came under the guardianship of the maternal grandfather, she would have night terrors, which have dissipated considerably since leaving mother's care. ADF suffers from severe mental health issues but receives biweekly mental health services and monthly psychiatric evaluations under the paternal grandmother's care. We are not left with a definite and firm conviction that the trial court erred by finding that termination was in the children's best interest.

Affirmed.

/s/ Michael J. Kelly
/s/ Christopher M. Murray
/s/ Stephen L. Borrello